IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAROLYN DARDEN, | : |
|     Petitioner, | : |
| v. | :   Civ. Act. No. 16-859-LPS |
| CLAIRE DEMATTEIS, Commissioner, Delaware Department of Corrections, SHANE TROXLER, Bureau Chief, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
|     Respondents.[1] | : |

J. Brendan O'Neill, Office of Defense Services for the State of Delaware, Wilmington, Delaware. Attorney for Petitioner.

Brian Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

**MEMORANDUM OPINION**

September 30, 2019
Wilmington, Delaware

---

[1]Commissioner Claire DeMatteis and Bureau Chief Shane Troxler have replaced former Commissioner Robert M. Coupe and former Bureau Chief Alan Grinstead, original parties to the case. *See* Fed. R. Civ. P. 11(d).

1

STARK, U.S. District Judge:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Carolyn Darden ("Petitioner"). (D.I. 2) The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 9; D.I. 16) For the reasons discussed, the Court will dismiss Petitioner's § 2254 Petition as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## I.  BACKGROUND

On February 20, 2012, Petitioner pled guilty to one count of drug dealing. (D.I. 9 at 1) On that same day, the Superior Court sentenced Petitioner to ten years of Level V incarceration, suspended after time served for eighteen months at Level III supervision. (D.I. 9 at 2) Petitioner did not file a direct appeal.

On January 16, 2015, Delaware's Office of Defense Services ("OPD") filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on behalf of Petitioner, which the Superior Court summarily dismissed on February 12, 2015. (D.I. 9 at 2) The Delaware Supreme Court affirmed that decision on December 2, 2015. *See Williams v. State*, 129 A.2d 231 (Table), 2015 WL 7776322 (Del. Dec. 2, 2015).

On September 23, 2016, the OPD filed a § 2254 Petition on Petitioner's behalf asserting that Petitioner's lack of knowledge of an evidence scandal at the Office of the Chief Medical Examiner ("OCME") was material to her decision to plead guilty and, therefore, her guilty plea was involuntary pursuant to *Brady v. United States*, 397 U.S. 742, 748 (1970). (D.I. 2) Petitioner also argues that the Delaware Supreme Court made unreasonable findings of fact during her post-conviction appeal regarding OCME misconduct. The State filed an Answer asserting that the Petition should be dismissed as time-barred or, alternatively, because the Claim is meritless. (D.I. 9)

2

Petitioner filed a Reply arguing that the Court should equitably toll the limitations period and deem the Petition timely filed. (D.I. 16 at 7)

### A. OCME CRIMINAL INVESTIGATION

As summarized by the Delaware Supreme Court, the relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

### II. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner's § 2254 Petition, filed in 2016, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B) or (C). She does, however, appear to assert that she is entitled to a later starting date for AEDPA's limitations period – April 15, 2014 – under § 2244(d)(1)(D), because that is the date on which the State began to notify defendants in certain active cases about the OCME evidence misconduct. (D.I. 16 at 7)

In order to determine if the April 15, 2014 revelation of the OCME misconduct constitutes a newly discovered factual predicate warranting a later starting date for the limitations period under §2244(d)(1)(D), the Court must first distill Petitioner's argument to its core. The argument appears to be two-fold. First, Petitioner contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that there was ongoing misconduct at the OCME during the time she was considering whether to enter a plea. Second, she contends that the Delaware state courts should have deemed her guilty plea involuntary under *Brady v. United States*, 397 U.S. 742, 748 (1970),

4

due to the State's failure to disclose the *Brady v. Maryland* evidence, *i.e.*, the OCME misconduct. In short, Petitioner asserts that her lack of knowledge about the OCME misconduct is vital to her habeas Claim because that lack of knowledge rendered her guilty plea involuntary and unknowing under *Brady v. United States*.

Pursuant to *Brady v. United States*, a guilty plea is considered involuntary if it is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady*, 397 U.S. at 755. A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence.[2] *See United States v. Bagley*, 473 U.S. 667, 676 (1985). For purposes of the inquiry under § 2244(d)(1)(D), whether or not the OCME misconduct affected, or could have affected, Petitioner's decision to plead guilty depends on whether the drugs in her case were tested by the OCME and the results were provided to her prior to entering a plea. Therefore, in order to trigger a later starting date under § 2244(d)(1)(D) for this involuntary plea/*Brady v. Maryland* Claim, Petitioner must show that (1) the drug evidence in her case was tested by the OCME and she received the results of the test before entering a plea; and (2) exercising due diligence, she could not have learned that the evidence in her case may have been part of the compromised drug evidence involved in the OCME scandal until April 15, 2014.

---

[2] A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

Petitioner has not met her burden, because she has not satisfied the first prong of this test. Petitioner entered her guilty plea on February 20, 2012. Although the OCME report concerning the drugs was completed on February 7, 2012, the OCME report was not signed (and presumably not available to Petitioner)[3] until May 7, 2012. (D.I. 12-3 at 57) If the OCME test results were not provided until May 7, 2012, then the test results cannot have played a factor in her decision plead guilty in February 2012. Thus, the Court need not address the second prong of the inquiry and, instead, concludes that Petitioner has not established a factual predicate triggering a later starting date for the limitations period under § 2244(d)(1)(D). Accordingly, the one-year limitations period began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner on February 20, 2012, and she did not appeal that judgment. Therefore, Petitioner's conviction became final on March 21, 2012. *See* Del. Supr. Ct. R. 6(a)(ii) (establishing thirty day period for timely filing of notice of appeal). Applying the one-year limitations period to that date, Petitioner had until March 21, 2013 to timely file her Petition. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's

---

[3]Significantly, Petitioner does not mention the date on which she received the OCME report. She also concedes that she filed her Rule 61 motion "well after April 15, 2014," and that she filed the instant Petition after the expiration of AEDPA's limitations period. (D.I. 16 at 7) Given these circumstances, the Court concludes that Petitioner did not view the OCME report before entering a guilty plea.

6

one-year limitations period is calculated according to anniversary method, *i.e.*, limitations period expires on anniversary of triggering event).

Petitioner did not file the instant § 2254 petition until September 23, 2016, approximately three years and six months after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled.

### A. Statutory tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Here, the Rule 61 motion Petitioner filed on January 16, 2015 has no statutory tolling effect, because it was filed after AEDPA's limitations period had already expired. Thus, the Petition is time-barred, unless equitable tolling is available.

### B. Equitable Tolling

In very rare circumstances, the one-year limitations period may be tolled for equitable reasons when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A

7

petitioner's obligation to act diligently applies to both her filing of the federal habeas application and to her filing of state post-conviction applications. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). In turn, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*See Jones*, 195 F.3d at 159; *Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Here, Petitioner contends that equitable tolling is warranted because "she pursued he rights diligently" and

> [i]t would be inequitable to prevent her from seeking relief when several similarly situated petitioners will have their claims heard even though they discovered the misconduct at the same time as she did, filed their petitions at the same time or after she did and exhausted their state remedies around the same time as she did. It is unfair to penalize her because her counsel's state resources were significantly strained due to the hundreds of motions they filed upon discovery of the misconduct.

(D.I. 16 at 8) Petitioner also states that

> additional extraordinary circumstances resulted from the systemic nature of the government misconduct. Counsel had to: 1) identify which of a vast number of clients had viable claims; 2) contact all of those clients; 3) file a vast number of petitions for those with legitimate claims; 4) operate with limited state resources strained by the volume of filings; 5) stop filing petitions in order to research and brief issues raised due to the Superior Court's abrupt and drastic amendment to Rule 61 without notice to counsel; 6) prepare for, participate in and submit briefing following a 3-day evidentiary hearing in *State v. Irwin* to uncover further evidence of OCME misconduct; and 7) repeatedly supplement filed motions with new evidence of misconduct that continued to trickle out over the next two or more years.

8

(D.I. 16 at 8-9)

Petitioner's equitable tolling argument is unavailing. Her assertions regarding strained state resources, number of post-conviction cases, *etc*, do not constitute extraordinary circumstances for equitable tolling purposes. *See Hendricks v. Johnson*, 62 F. Supp. 3d 406, 411 (D. Del. 2014) ("attorney error, miscalculation, inadequate research, or other mistakes" do not amount to extraordinary circumstances for equitable tolling purposes). Even if these "events" could somehow be construed as extraordinary, Petitioner has not demonstrated that they actually prevented her from filing a basic habeas petition. *See Ross v. Varano*, 712 F.3d 784, 803 (3rd Cir. 2013) ("[F]or a petitioner to obtain relief [via equitable tolling] there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition."). For instance, Petitioner concedes she knew the facts surrounding the OCME evidence scandal as of April 15, 2014. Given this concession, the Court is not persuaded by Petitioner's assertion that she could not have filed her Rule 61 motion before January 16, 2015. Additionally, since Petitioner was aware of enough basic facts of the OCME scandal in April 2014, she has failed to demonstrate that she was prevented from filing a basic protective petition[4] in this Court before September 21, 2016. While a habeas petition filed on or around April 2014 or even January 2015 would still have been untimely, Petitioner's act of filing a protective petition around that time would have helped to demonstrate reasonable diligence on Petitioner's part. *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir.

---

[4]The Supreme Court has explained that a "petitioner's reasonable confusion about whether a state filing would be timely" when attempting to exhaust state remedies may constitute good cause for him to file a "protective petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

9

2000)(once extraordinary circumstance ends, petitioner must exercise reasonable diligence in filing her petition).

In short, Petitioner cannot demonstrate that the OCME scandal, and/or the timing of the State's disclosure about the OCME scandal, actually prevented her from timely filing a petition seeking federal habeas relief. For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts she has presented. Accordingly, the Court will deny the instant Petition as time-barred.[5]

## III. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484.

The Court has concluded that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

---

[5]Having concluded that it must deny the Petition as time-barred, the Court will not address the State's alternate reason for denying the Petition.

10

## IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.